Filed 8/17/21  In re Alicia H. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re ALICIA H., a Person Coming Under the Juvenile Court Law. | B309361 (Los Angeles County Super. Ct. No. 20CCJP03693) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ANGELA R., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Michael D. Abzug, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Angela R. (mother) appeals from the jurisdictional findings and disposition orders regarding Alicia H. (minor) under Welfare and Institutions Code sections 300 and 361.[1]  Mother and B.H. (father) are the parents of minor (born February 2007).[2]  Despite making no objection in the juvenile court, mother contends the juvenile court violated her right to due process when it removed minor from parental custody without first complying with section 241.1, a provision governing instances where a minor may fall under both the dependency laws (§§ 300 et seq.) and the delinquency laws (§§ 600 et seq.).  After the filing of mother's opening brief on appeal, the juvenile court ordered minor to be returned to the home of mother.  The juvenile court subsequently received a joint recommendation under section 241.1.[3]  We dismiss as moot the portion of mother's appeal asserting error under section 241.1.

Mother also contends that the Los Angeles County Department of

_____

[1] Further statutory references are to the Welfare and Institutions Code unless stated otherwise.

[2] Father is minor's presumed father.  Father is not a party to this appeal.

[3] On April 22, 2021, we granted the Department's April 15, 2021 Request for Judicial Notice, taking judicial notice of minute orders dated March 2, 2021 and April 13, 2021.

Children and Family Services (the Department) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California statutes. Because the Department's inquiry efforts were sufficient, and also because minor is now in mother's custody, we affirm the juvenile court's finding that ICWA does not apply.

## WELFARE AND INSTITUTIONS CODE SECTION 241.1

*Factual and Procedural Background*

There is an extensive history of troubling referrals to the Department involving minor, dating back to 2011 when minor was five years old, and of the Department investigating those referrals. Among those past referrals and investigations, in June 2016, the dependency court declared minor a dependent based on domestic violence between father and his female companion, and father leaving minor in maternal grandmother's care without an appropriate plan for minor's ongoing care and supervision. Mother was in state prison at the time. It appears the case was closed with the court giving mother physical and legal custody of minor in 2018.

In late May 2020, the Department began a new investigation related to the current case. Minor had been placed on multiple psychiatric holds and had physically assaulted mother. Minor—who was 13 years old at the time—had been diagnosed with multiple psychiatric conditions and prescribed multiple medications; mother needed help enrolling minor in mental health and in-home services. Minor denied needing help, but continued displaying aggressive and self-harming behaviors. With mother's acquiescence, the Department

obtained a removal order, detained minor, and placed her at an adolescent care facility. The Department filed a petition alleging under section 300, subdivision (b), that minor had mental and emotional problems, including self-harming and aggressive and assaultive behaviors; minor had been treated without success during an involuntary hospitalization, through psychological counseling and with medication; and mother's inability to provide parental care and supervision placed minor at risk of serious physical harm.

Minor ran away from her care facility in late July 2020. The Department later learned that minor was living with mother or maternal grandmother, both of whom refused to cooperate with the Department or to surrender minor for placement. The Department obtained a warrant against mother and maternal grandmother for "harboring" minor. Maternal grandmother brought minor to a Department office, without any additional clothes or proper medication, in early September 2020.

Once in Department custody, minor ran away several times. On September 12, 2020, mother brought minor back to her placement, and minor physically assaulted mother. Law enforcement responded to the incident, and minor damaged the patrol car window by kicking it. Ultimately, minor was placed on a psychiatric hold. After being released from the hospital, minor was placed at Hillsides, where she had daily incidents of running away, issues with substance use, and multiple physical altercations with other residents.

On September 23, 2020, mother informed the Department that minor had a pending assault case in Ventura County, stemming from a physical altercation between minor and school staff the year before. Minor had missed a court hearing on September 16, 2020. Mother provided the social worker with a phone number and e-mail address for minor's attorney in the Ventura case, and explained that the

4

attorney was trying to advocate for a therapeutic approach and sought to get minor admitted to a program for drug addiction. The record does not include evidence of any contact between the Department and minor's attorney in the Ventura case. On September 28, 2020, the juvenile court declared minor a dependent under section 300, subdivision (b), but continued the disposition hearing to a later date.

In early October 2020, minor ran away with three other girls. All three were taken into custody by law enforcement for assaulting a business owner while trying to steal liquor. Mother informed the social worker of the incident, and emphasized to the social worker that minor needed to be in a locked facility. The social worker spoke to minor's intake probation officer, Mr. Chapman. Minor was facing charges of felony robbery, attempted grand theft, and burglary, and was scheduled to be arraigned on October 8, 2020. The social worker discussed with Chapman minor's history and the need for her to be in a locked facility. Chapman agreed to keep the Department updated; based on minor's young age, the charges might be reduced so she could have dual supervision. Minor was released from juvenile hall the next day and returned to her residential treatment program at Hillsides.

On October 6, 2020, the social worker contacted minor's Ventura County probation officer Ashley Ramirez by e-mail. Ramirez reported that there was a petition pending against minor, with six misdemeanor counts, including five counts of battery on a school employee and one count of vandalism. Minor's counsel had declared a doubt as to minor's competency, and the case was continued to October 8, 2020, pending completion of the competency report. If minor were found incompetent, the petition would be dismissed. Ramirez asked for information about minor's placement status and also asked whether minor was on probation in Los Angeles County. Ramirez

planned to call Los Angeles County to find out if the District Attorney planned to file a petition for minor's involvement in a robbery.

In November 2020, both mother and grandmother expressed that minor should be returned home or placed in a locked facility. Maternal grandmother advised that she received mail from Ventura County probation stating that minor had a warrant out for her arrest for failing to appear in court. On November 10, 2020, minor and another girl ran away from Hillsides, and reportedly went to maternal grandmother's home, where minor called a male friend to engage in sex with minor and the other girl. On November 12, 2020, Hillsides issued a 14-day notice terminating minor's placement, based on her escalating behavior, including behaviors related to grooming and recruitment of Commercially Sexually Exploited Children (CSEC).

On November 19, 2020, the disposition hearing was continued to permit minor's counsel to contact minor's Ventura County probation officer. The court stated to minor, "we have some unanswered questions, because we don't know what's going to happen with your delinquency case in Ventura County, if that affects your request to have me consider placement with your mom. So the delinquency court has lead supervision on this case, so they get to make the first decisions." None of the attorneys made any objection to the court's characterization of the Ventura County juvenile court as having "lead supervision."

In a last minute information report dated November 30, 2020, the Department reported that minor and the Department appeared before the Ventura delinquency judge on November 23, 2020, minor's bench warrant was cleared, and the next hearing was set for January 7, 2021, to consider the results of minor's competency evaluation. If minor remained in placement, the Department would help facilitate the competency evaluation. The Department also reported, based on

6

concerns raised by minor's recent actions, that minor's case was being transferred to the CSEC unit in an effort to provide minor with intensive services to address her recent CSEC behavior, runaway episodes, and on-going substance abuse. The Department recommended that the case be transferred to a specialized court (the DREAM[4] court) dedicated to CSEC youth.

Judge Michael Abzug conducted the November 30, 2020 disposition hearing.[5] After the Department's reports were admitted into evidence, the Department called mother to testify. During her testimony, mother acknowledged minor had long-standing problems with mental health, substance abuse, and physical aggression. Mother also testified that if minor could not be in mother's care, minor should be in a locked facility, so she would be safe, rather than "running the streets, robbing and doing drugs." The Department asked the court to follow the Department's recommendation to keep minor suitably placed, because mother was not equipped to keep minor safe. Minor had numerous arrests and a pending delinquency case in Ventura for felony robbery, where the court was conducting a competency evaluation. Mother's counsel and minor's counsel both asked the court to return minor to mother's custody. Neither attorney

---

[4] DREAM is an acronym for "Dedication to Restoration through Empowerment, Advocacy and Mentoring," the name given to Department 417 of the juvenile dependency court. (<https://pubftp.dcfs.lacounty.gov/Policy/FYI/2016/001592_FYI_16-22_Dream_Court_6-7-16.pdf> [as of Aug. 6, 2021], archived at https://perma.cc/5H7Z-C6U4.)

[5] Prior hearings were conducted before Judge Emma Castro. It is not apparent from the record why Judge Castro did not preside over the disposition hearing.

made any mention of the Ventura County delinquency case, nor did they object to the absence of a joint recommendation under section 241.1.  The court ordered minor removed from parental custody, acknowledging that mother was willing to care for minor, but finding mother lacked the ability to do so.  Mother filed a notice of appeal the same day.

On March 2, 2021, after mother had filed her opening brief in this appeal, the juvenile court returned minor to mother's custody.  On April 13, 2021, the juvenile court received a joint recommendation under section 241.1 dated March 18, 2021.

*Mother's Contentions on Appeal*

Mother contends her due process rights were violated when the juvenile court conducted the disposition hearing and removed minor from parental custody without first requiring a joint recommendation under section 241.1.

*Governing Law*

"A child who has been abused or neglected falls within the juvenile court's protective jurisdiction under section 300 as a 'dependent' child of the court.  In contrast, a juvenile court may take jurisdiction over a minor as a 'ward' of the court under section 602 when the child engages in criminal behavior. [Citations.] . . . [S]ection 241.1 sets forth the procedure that the juvenile court must follow when faced with a case in which it may have dual bases for jurisdiction over a minor."  (*In re M.V.* (2014) 225 Cal.App.4th 1495, 1505–1506, fn. omitted.)  Unless certain statutory requirements for designating a minor a "dual status

8

child" are met, the juvenile court may not enter an order "to make a minor simultaneously both a dependent child and a ward of the court." (§ 241.1, subd. (d), (e).)

"Section 241.1 requires that whenever it appears a minor may fit the criteria of both a dependent child and a delinquent ward, the child protective agency and the probation department must jointly 'initially determine which status will serve the best interests of the minor and the protection of society.' [Citation.] Both agencies present their recommendations to the juvenile court, which then must determine the appropriate status for the child. [Citation.]" (*D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1123.) The same process for submitting recommendations applies when a minor has a delinquency case in one county and a dependency case in a different county.[6]

---

[6] The full text of section 241.1, subdivision (c) states: "Whenever a minor who is under the jurisdiction of the juvenile court of a county pursuant to Section 300, 601, or 602 is alleged to come within the description of Section 300, 601, or 602 by another county, the county probation department or child welfare services department in the county that has jurisdiction under Section 300, 601, or 602 and the county probation department or child welfare services department of the county alleging the minor to be within one of those sections shall initially determine which status will best serve the best interests of the minor and the protection of society. The recommendations of both departments shall be presented to the juvenile court in which the petition is filed on behalf of the minor, and the court shall determine which status is appropriate for the minor. In making their recommendation to the juvenile court, the departments shall conduct an assessment consistent with the requirements of subdivision (b). Any other juvenile court having jurisdiction over the minor shall receive notice from the court in which the petition

(§ 241.1, subdivision (c).) The statutory mandate is "augmented by [Cal. Rules of Court,] rule 5.512, which requires the joint assessment under section 241.1 to be memorialized in a written report." (*M.V., supra*, 225 Cal.App.4th at p. 1506.)

The statutory requirement for a joint recommendation applies upon the filing of the second petition, meaning that the court in which the second petition has been filed must determine whether minor's case should proceed under dependency or delinquency, or if the requirements for dual status have been met. (*In re Aaron J.* (2018) 22 Cal.App.5th 1038, 1055 (*Aaron J.*).) Although the joint recommendation should be filed "*with* the petition that is filed on behalf of the minor," (§ 241.1, subd. (a), italics added), the absence of a report does not deprive the court of jurisdiction. (*In re M.V., supra*, 225 Cal.App.4th at p. 1509–1510.) A party may forfeit any objection to the untimely filing of a section 241.1 report by failing to object. (*Ibid.*)

*Analysis*

Our analysis is limited to considering whether this portion of mother's appeal should be dismissed as moot.[7] The

_____

is filed within five calendar days of the presentation of the recommendations of the departments. The notice shall include the name of the judge to whom, or the courtroom to which, the recommendations were presented."

[7] On July 8, 2021, we invited the parties to brief the court on the questions of whether mother had standing to raise the issue of compliance with section 241.1 and whether mother forfeited the issue by failing to raise it with the trial court. Mother and the Department filed letter briefs in response.

Department raised the issue of mootness in its respondent's brief; mother filed no reply brief and has not addressed the issue.

"'[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error.' (*In re N.S.* (2016) 245 Cal.App.4th 53, 60.) A court ordinarily will dismiss an appeal when it cannot grant effective relief, but may instead 'exercise its inherent discretion to resolve an issue when there remain "material questions for the court's determination" [citation], where a "pending case poses an issue of broad public interest that is likely to recur" [citation], or where "there is a likelihood of recurrence of the controversy between the same parties or others."' (*Id.* at p. 59.)" (*In re David B.* (2017) 12 Cal.App.5th 633, 644.)

The Department contends that the portion of mother's appeal challenging the absence of a joint recommendation under section 241.1 is moot. Because daughter has been returned to mother's custody, we agree that there is no effective relief to be had if we were to reverse the juvenile court's disposition order. Mother did not file a reply brief to contend otherwise. We recognize that we have discretion to take up an issue even where no effective relief can be granted to appellant under some circumstances. (See, e.g., *In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1404 [despite return of child to mother after filing of mother's appeal, appellate court exercises inherent discretion to address issue of continuing public importance].) However, given the ambiguity in the record as to whether minor had been declared a ward of the court in Ventura County prior to the

Because we dismiss this portion of mother's appeal as moot, we do not discuss standing or forfeiture in this opinion.

dependency court making the challenged dispositional order, and the fact that mother has not argued that the issue is one of public importance, we decline to exercise our discretion to consider the issue. We therefore dismiss this portion of mother's appeal as moot.

## ICWA COMPLIANCE

*Factual and Procedural Background*

In July 2020, father filed an ICWA-020 (Parental Notification of Indian Status) form, claiming possible Apache ancestry through minor's paternal great-grandmother. The court directed the Department to interview father, and to notice the Apache Nation and the Bureau of Indian Affairs (BIA), as warranted, based on the information gathered during the Department's inquiry. The Department was initially unable to locate father to interview him. In late September 2020, a dependency investigator spoke with mother and father about father's claim of Indian ancestry. Mother had no tribal information, but confirmed that paternal grandmother was deceased, and provided names and birthdates for maternal extended family members. Father explained that while neither he nor minor were registered with a tribe, minor's paternal grandmother and great-grandmother were from Mexico and looked like they had Indian ancestry. Paternal grandmother was deceased, and while paternal great-grandmother was alive, she was non-verbal and could not provide any information. Father had a half-sister on his mother's side, and he was residing with paternal grandfather. Father told the investigator he would

speak to his relatives and keep the investigator updated. Father was reluctant to share information without speaking to the relatives first.

At a hearing on September 25, 2020, the court repeated its prior direction to the Department to interview paternal grandmother and notice the BIA and Apache Nation.[8] On October 6, 2020, the dependency investigator spoke with father again, and father said he may be Apache, Blackfoot, or may not have any Indian American ancestry. The Department did not report conducting any further investigation, but on October 6, 2020, the Department sent ICWA notices to the United States Secretary of the Interior, a BIA address in Sacramento, California, eight different Apache tribes, and Blackfeet tribes. The notices included the name, address, and birthdate information for mother and father, as well as name and birthdate information for maternal and paternal grandparents and great-grandparents, as well as the names and phone numbers of the tribal contacts. Six tribes responded that minor was not eligible for enrollment with the tribe.

At the disposition hearing on November 30, 2020, all counsel agreed that ICWA did not apply. The court found the Department made a good faith effort to determine whether ICWA applied, and then found ICWA inapplicable.

---

[8] We understand the court's reference to paternal grandmother to mean paternal great-grandmother, as the Department had already reported paternal grandmother was deceased.

13

*ICWA Inquiry and Notice Requirements*

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' [Citation.]" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).) "In California, . . . persistent noncompliance with ICWA led the Legislature in 2006 to 'incorporate[ ] ICWA's requirements into California statutory law.' [Citations.]" (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91; see also *In re Breanna S.* (2017) 8 Cal.App.5th 636, 650, disapproved on another ground in *In re Caden C.* (2021) 11 Cal.5th 614, 638, fn. 7 [California law "incorporates and enhances ICWA's requirements"].) Both ICWA and California law define an "Indian child" as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); § 224.1, subds. (a) & (b); see also *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 783.)

The court and the Department have an affirmative and continuing duty under the ICWA and related California law to inquire whether a child who is the subject of a dependency proceeding is or may be an Indian child. (*Isaiah W.*, *supra*, 1 Cal.5th at pp. 7–8.) The scope of the duty of inquiry is defined in regulations promulgated under ICWA (see 25 C.F.R. § 23.107 et seq. (2020)), California statutes, and rules of court. (*In re T.G.* (2020) 58 Cal.App.5th 275, 290–291.) Here, we apply the law in

effect in November 2020, when the disposition hearing took place. (*In re A.M.* (2020) 47 Cal.App.5th 303, 321.)

The Department's initial duty of inquiry at the beginning of a child welfare proceeding includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) The court must inquire at each party's first appearance, whether any participant in the proceeding "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) Part of the initial inquiry includes requiring each party to complete the ICWA-020 form. (Cal. Rules of Court, rule 5.481(a)(2)(C).)

When there is "reason to believe that an Indian child is involved in a proceeding," further inquiry is required. (§224.2, subd. (e); *In re T.G.*, *supra*, 58 Cal.App.5th at p. 290, fn. 14.) Effective September 18, 2020, section 224.2, subdivision (e)(1), explains that "reason to believe" exists "whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."

Further inquiry includes interviewing parents and extended family members to obtain information such as the names of the child's "biological parents, grandparents, and great-grandparents, . . . as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known." (§ 224.2, subd. (e)(2)(A); 224.3, subd. (a)(5)(C); Cal. Rules of Court, rule 5.481(a)(4)(A).) The agency engaging in further inquiry is also required to contact

15

the Bureau of Indian Affairs, the State Department of Social Services, and any tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe.  (§ 224.2, subds. (e)(2)(B) & (e)(2)(C); Cal. Rules of Court, rule 5.481(a)(4)(B) & (C).)

If the further inquiry under section 224, subdivision (e), results in information that would give the court or the Department "reason to know" that the child is an Indian child under ICWA, then the relevant tribes must be given notice of the proceedings.  (25 U.S.C. § 1912, subd. (a); §224.3, subd. (a); §224.2, subd. (d) [describing circumstances where there is "reason to know" a child is an Indian child].)

We review ICWA findings for substantial evidence.  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051.)

*Adequacy of Department's Inquiry*

The question posed by mother's appeal is whether the Department's efforts met the "further inquiry" obligations imposed under ICWA and section 224.2, subdivision (e).  Mother contends that the Department sent notices out prematurely, without making inquiries which could have led to information showing that minor was an Indian child.  The Department contends that because father did not provide the names of any relatives who might be able to provide additional information, the court correctly found ICWA did not apply.  The Department also contends that since minor has been returned to mother's custody, further compliance with ICWA is no longer necessary.

The record shows the Department conducted some additional inquiry after father initially claimed Indian ancestry

16

and the juvenile court directed the Department to investigate father's claim. According to the Department's report, father was reluctant to provide relative information without contacting them himself first. Mother argues the ICWA finding must be reversed because the Department did not attempt to interview paternal grandfather, with whom father was residing, or a paternal aunt (father's half-sister on his mother's side), nor did the Department attempt to contact the tribes before sending ICWA notices. However, mother does not explain what additional information the Department might have obtained by interviewing additional relatives, rather than relying on father to relay the information provided by those relatives. (See *In re D.S., supra,* 46 Cal.App.5th at p. 1053 [ICWA does not require Department to pursue unproductive investigative leads].) The notices sent to the tribes included the names and birthdates of minor's grandparents and great-grandparents, and none of the responses from the tribes stated that additional information was necessary to determine whether minor was an Indian child. ICWA inquiry is not an end in itself, but rather is a predicate to determining whether there is a tribe or tribes that are entitled to notice of the dependency proceeding. (§ 224.3, subd. (a) ["If the court, a social worker, or probation officer knows or has reason to know . . . that an Indian child is involved, notice [to the child's tribe] pursuant to Section 1912 of the federal Indian Child Welfare Act of 1978 (25 U.S.C. Sec. 1901 et seq.) shall be provided for hearings"].) While the Department's reports do not clarify how or when the Department obtained the information included in the ICWA notice, or how it was able to identify the tribes to which the ICWA notices were sent, we see from the notice itself that the Department was in possession of that information. From those

17

facts, we can infer that the Department conducted the further inquiry required under section 224.2, subdivision (e).

Even if the Department's duty of further inquiry warranted additional inquiry, we find no prejudicial error. Minor has been returned to mother's custody, eliminating any need for additional inquiry or notice. Notice under ICWA is required only when an Indian child is removed from a parent, *not* when the child remains in a parent's physical custody. (§ 224.2, subd. (f) [requiring ICWA notice if agency is "seeking foster care placement"]; see also *In re M.R.* (2017) 7 Cal.App.5th 886, 904 ["ICWA and its attendant notice requirements do not apply to a proceeding in which a dependent child is removed from one parent and placed with another"]; *In re Alexis H.* (2005) 132 Cal.App.4th 11, 14 ["[b]y its own terms, [ICWA] requires notice only when child welfare authorities seek permanent foster care or termination of parental rights; it does not require notice *anytime* a child of possible or actual Native American descent is involved in a dependency proceeding"].)

## DISPOSITION

The portion of mother's appeal based on Welfare and Institutions Code section 241.1 is dismissed as moot. The juvenile court's November 30, 2020 order finding that ICWA does not apply is affirmed.


MOOR, J.


We concur:


RUBIN, P.J.                    BAKER, J.